# UNITED STATES DISTRICT COURT
## FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICIA SIMPSON, ) | |
| Plaintiff ) | |
| ) | **Case No.:** |
| v. ) | |
| NCO FINANCIAL SYSTEMS, INC., ) | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| Defendant ) | **(Unlawful Debt Collection Practices)** |

## COMPLAINT

PATRICIA SIMPSON ("Plaintiff"), by her attorneys, KIMMEL & SILVERMAN, P.C., alleges the following against NCO FINANCIAL SYSTEMS, INC. ("Defendant"):

## INTRODUCTION

1.      Plaintiff's Complaint is based on the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").

## JURISDICTION AND VENUE

2.      Jurisdiction of this court arises pursuant to 15 U.S.C. § 1692k(d), which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy," and 28 U.S.C. § 1331 grants this court original jurisdiction of all civil actions arising under the laws of the United States.

3.      Defendant conducts business and has an office in the Commonwealth of Pennsylvania and therefore, personal jurisdiction is established.

- 1 -

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

5.      Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

6.      Plaintiff is a natural person residing in San Marcos, California 92078.

7.      Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

8.      Defendant is a national debt collection company with corporate headquarters located at 507 Prudential Road in Horsham, Pennsylvania, 19044.

9.      Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6), and repeatedly contacted Plaintiff in an attempt to collect a debt.

10.     Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## PRELIMINARY STATEMENT

11.     The Fair Debt Collection Practices Act ("FDCPA") is a comprehensive statute, which prohibits a catalog of activities in connection with the collection of debts by third parties. See 15 U.S.C. § 1692 *et seq*. The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. § 1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

PLAINTIFF'S COMPLAINT

12.     In particular, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action. The substantive heart of the FDCPA lies in three broad prohibitions. First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. And third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The FDCPA is designed to protect consumers from unscrupulous collectors, whether or not there exists a valid debt, broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and any false, deceptive or misleading statements in connection with the collection of a debt.

13.     In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692a. Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers. 15 U.S.C. § 1692b.

14.     Congress enacted the FDCPA to regulate the collection of consumer debts by debt collectors. The express purposes of the FDCPA are to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e.

## FACTUAL ALLEGATIONS

15.   At all relevant times, Defendant was attempting to collect an alleged consumer debt from Plaintiff.

16.   The alleged debt at issue arose out of transactions, which were primarily for personal, family, or household purposes.

17.   Beginning on or around March 2010 and continuing until August 2010, Defendant, its agents, employees, and servants, engaged in debt collection activities seeking payment from Plaintiff.

18.   On or around December 28, 2010, Defendant sent correspondence addressed to Plaintiff's daughter, Nicola Guzman, to Plaintiff's address seeking and demanding payment of $12,801.93 in regards to an alleged American Express debt. A true and correct copy of the December 28, 2010 letter is attached hereto as Exhibit "A".

19.   Defendant's December 28, 2010, letter indicated that Nicola Guzman had "not responded" to Defendant's previous letter. See Exhibit A.

20.   This confused Plaintiff, as neither she nor her daughter, had ever received any correspondence from Defendant prior to the December 28, 2010 letter.

21.   On or around January 1, 2011, Defendant called Plaintiff and informed her that she could settle the alleged debt for $1,500.00.

22.   Knowing that she had an American Express account and believing that Defendant was acting in an official capacity, Plaintiff provided Defendant with her bank account information.

23.   Plaintiff advised Defendant that no funds should be removed from her bank

- 4 -

account for up to a week because the account did not contain $1,500.00 and Plaintiff would have to deposit money into the account.

24.     Plaintiff also insisted that Defendant fax over a confirmation letter laying out the terms of the settlement agreement, by the end of the day.

25.     Defendant never faxed Plaintiff a confirmation letter in regards to the proposed settlement.

26.     At no time did either American Express or Defendant put Plaintiff on notice that Defendant was authorized to collect any American Express account owed by Plaintiff.

27.     Plaintiff began to feel confused and scared that she had given her bank account information to Defendant, a complete stranger.

28.     On January 3, 2011, Plaintiff contacted American Express and was told by American Express that the account had been paid in full.

29.     Plaintiff began to worry that American Express had not authorized Defendant to collect on the alleged debt and feared she was involved in a scam; hence, she immediately closed her bank account.

30.     On or around January 6, 2011, Defendant contacted Plaintiff and informed her that it was unable to remove the funds from her bank account.

31.     Plaintiff informed Defendant that she was not willing to make payment, especially since American Express had informed her the account was paid in full and Defendant had failed to send information regarding the settlement agreement to her in writing.

32.     Furthermore, Plaintiff was upset that despite instructing Defendant to wait a week before removing any funds from her bank account, Defendant ignored those instructions, thereby placing Plaintiff at risk of incurring bank penalties.

PLAINTIFF'S COMPLAINT

33.     On January 6, 2011, at 1:39p.m. Defendant faxed over a settlement letter that stated: "we [Defendant] can offer you a settlement of $1,500.00 due by 01/06/11. Upon clearance of said funds, American Express will be notified that the account is settled." A true and correct copy of the January 6, 2011 letter is attached hereto as Exhibit "B".

34.     Defendant's January 6, 2011, letter demanded immediate payment from Plaintiff.

35.     On January 7, 2011, Defendant sent another letter to Plaintiff, informing her that "the check you presented to this office was returned by your bank" and $12,801.93 was still due and owing on the alleged debt. A true and correct copy of the January 7, 2011 letter is attached hereto as Exhibit "C".

36.     Plaintiff was confused by this correspondence as nether Plaintiff nor did her daughter ever sent a check to the Defendant.

37.     Further, Defendant's January 7, 2011 letter demanded Plaintiff "forward payment" and indicated an amount owed as $12,801.93. See Exhibit C.

38.     This was also confusing to Plaintiff in light of the correspondence sent just one day prior indicating a payment of $1,500 would resolve the debt. See Exhibit B.

39.     Since the initial correspondence with Defendant on December 28 2010, Plaintiff has still not received a letter notifying her of her rights and privileges under the law, specifically the right to dispute and/or request verification of the alleged debt.

## CONSTRUCTION OF APPLICABLE LAW

40.     The FDCPA is a strict liability statute. Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232 (5th Cir. 1997). "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." Russell v.

Equifax A.R.S., 74 F. 3d 30 (2d Cir. 1996); see also Gearing v. Check Brokerage Corp., 233 F.3d 469 (7th Cir. 2000) (holding unintentional misrepresentation of debt collector's legal status violated FDCPA); Clomon v. Jackson, 988 F. 2d 1314 (2d Cir. 1993).

41.    The FDCPA is a remedial statute, and therefore must be construed liberally in favor of the debtor.  Sprinkle v. SB&C Ltd., 472 F. Supp. 2d 1235 (W.D. Wash. 2006).  The remedial nature of the FDCPA requires that courts interpret it liberally.  Clark v. Capital Credit & Collection Services, Inc., 460 F. 3d 1162 (9th Cir. 2006).  "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C §1601 et seq., is a remedial statute, it should be construed liberally in favor of the consumer."  Johnson v. Riddle, 305 F. 3d 1107 (10th Cir. 2002).

42.    The FDCPA is to be interpreted in accordance with the "least sophisticated" consumer standard.  See Jeter v. Credit Bureau, Inc., 760 F.2d 1168 (11th Cir. 1985); Graziano v. Harrison, 950 F. 2d 107 (3rd Cir. 1991); Swanson v. Southern Oregon Credit Service, Inc., 869 F.2d 1222 (9th Cir. 1988). The FDCPA was not "made for the protection of experts, but for the public - that vast multitude which includes the ignorant, the unthinking, and the credulous, and the fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced."  Id.  The least sophisticated consumer standard serves a dual purpose in that it ensures protection of all consumers, even naive and trusting, against deceptive collection practices, and protects collectors against liability for bizarre or idiosyncratic interpretations of collection notices. Clomon, 988 F. 2d at 1318.

- 7 -

## COUNT I
## DEFENDANT VIOLATED THE
## FAIR DEBT COLLECTION PRACTICES ACT

43.   In its actions to collect a disputed debt, Defendant violated the FDCPA in one or more of the following ways:

    a.   Defendant violated of the FDCPA generally;

    b.   Defendant violated § 1692d of the FDCPA by harassing Plaintiff in connection with the collection of an alleged debt;

    c.   Defendant violated § 1692e of the FDCPA by using false, deceptive, or misleading representations or means in connection with the collection of a debt;

    d.   Defendant violated § 1692e(10) of the FDCPA by using false representations or deceptive means to collect or attempt to collect a debt;

    e.   Defendant violated § 1692f of the FDCPA by using unfair and unconscionable means with Plaintiff to collect or attempt to collect a debt;

    f.   Defendant violated § 1692g of the FDCPA by failing to send written notification, within five (5) days after its initial communication with Plaintiff, advising Plaintiff of her rights to dispute the debt or request verification of the debt;

    g.   Defendant acted in an otherwise deceptive, unfair and unconscionable manner and failed to comply with the FDCPA.

WHEREFORE, Plaintiff, PATRICIA SIMPSON, respectfully pray for a judgment as follows:

      a.  All actual compensatory damages suffered pursuant to 15 U.S.C. § 1692k(a)(1);

      b.  Statutory damages of $1,000.00 for the violation of the FDCPA pursuant to 15 U.S.C. § 1692k(a)(2)(A);

      c.  All reasonable attorneys' fees, witness fees, court costs and other litigation costs incurred by Plaintiff pursuant to 15 U.S.C. § 1693k(a)(3); and

      d.  Any other relief deemed appropriate by this Honorable Court.

## DEMAND FOR JURY TRIAL

PLEASE TAKE NOTICE that Plaintiff, PATRICIA SIMPSON, demands a jury trial in this case.

RESPECTFULLY SUBMITTED,

DATED: 04/29/11           KIMMEL & SILVERMAN, P.C..

By:

Amy L. Bennecoff
Attorney ID # 202745
Kimmel & Silverman, P.C.
30 E. Butler Pike
Ambler, PA 19002
Phone: (215) 540-8888
Fax: (877) 788-2864
Email: abennecoff@creditlaw.com

-9-

PLAINTIFF'S COMPLAINT